IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
SEARS, ROEBUCK AND CO.,           *
                                  *
     v.                           *     Civil No. SKG-11-2203
                                  *
RIGGS DISTLER & CO., INC.         *
                                  *
*    *    *    *    *    *    *   *
                                  *
RIGGS DISTLER & CO., INC.         *
                                  *
     v.                           *
                                  *
VALERIE WHITESIDE                 *
*    *    *    *    *    *    *
```

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Ms. Whiteside's Motion to Dismiss the Third Party Complaint ("TPC") filed against her (ECF No. 27), and Ms. Whiteside's informal Motion to Stay Discovery, specifically three scheduled depositions, until a ruling on her Motion to Dismiss. (ECF No. 38, 2).[1] For reasons set forth below, the Court GRANTS both the Motion to Dismiss (ECF No. 27) and the Motion to Stay Discovery (ECF No. 38).

Plaintiff is Sears, Roebuck and Co., which leases premises for a retail store in the White Marsh Mall (the "Mall"). (ECF

---

[1] Also pending before the Court is Ms. Whiteside's Motion for Sanctions Against Defendant/Third Party Plaintiff Riggs Distler and Co., Inc. and Its Counsel, Eccleston and Wolf (ECF No. 34-8) and the Motion for Order Finding Defendant/Third Party Plaintiff Riggs Distler and Co., Inc. and Its Counsel, Eccleston and Wolf, in Violation of Federal Rule of Civil Procedure 11 (ECF No. 34). Pursuant to Local Rule 105.8(b), the Court now orders the Defendant/Third Party Plaintiff Riggs Distler to respond, by May 4, 2012.

1

No. 1, ¶¶ 1, 5).  Defendant is a Maryland company that contracted with Baltimore Gas and Electric ("BGE") to replace an underground electrical cable at the Mall. (Id. ¶ 6).

On August 11, 2011, plaintiff filed a complaint against defendant alleging that, while replacing the underground electrical cable at the Mall, defendant's employees negligently struck a water main near plaintiff's store. (Id. ¶ 5, 6-7, 10). Plaintiff claimed that the water main ruptured, and that the ensuing gush of water damaged plaintiff's equipment, created a power outage, and caused the store to close. (Id. ¶¶ 7-8). Plaintiff sought damages for remediation and repair, labor and other expense, and lost profits. (Id. ¶ 9).

On November 17, 2011, defendant filed a Third Party Complaint ("TPC") against Ms. Whiteside (ECF No. 20), who was manager of the Mall at all relevant times.  The TPC alleges that the Mall was owned and managed by General Growth Properties ("GGP").  (ECF No. 20, ¶ 9; ECF No. 28, ¶ 9).  The TPC contained two counts (Count I—Indemnity, and Count II—Contribution), and alleged that Ms. Whiteside is liable for the August 22, 2008 water main break, as an employee and agent of GGP.  (ECF No. 20).  To that end, the TPC alleged that on or about July 30, 2008,

2

> Ms. Whiteside and the head of maintenance at the White Marsh Mall approached the Riggs Distler work crew and Ms. Whiteside informed them that the White Marsh Mall would assume liability if the Riggs Distler work crew struck any unmarked, underground water mains during the performance of its work.

(ECF No. 20, ¶ 12). Defendant argued that, "[b]ut for the agreement to assume any and all liability, Riggs Distler would not have begun performance of the directional boring and excavation work without locating any unmarked, underground water mains." (Id. ¶ 13).

Ms. Whiteside moved to dismiss the TPC on January 20, 2012, challenging, as insufficient, defendant's allegations of liability against her. (ECF No. 27).  She pointed to the Maryland law that "if an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, he is insulated from liability," (ECF No. 27-1, 3) (internal citation omitted), and argued that defendant cannot claim that Ms. Whiteside's principal was unknown, because the TPC alleges that Ms. Whiteside informed defendant's work crew "that the White Marsh Mall would assume liability" in the event that a water main was struck.  (Id. at 4).

In response, defendant concurred in the general rule that "an agent or officer of a corporation cannot be held personally liable for contracts entered into on behalf of the principal if

3

the agent fully discloses the identity of the principal to the third-party" (ECF No. 32, 4), but argued that the Mall and GGP were unidentified principals at the time of the alleged indemnification agreement. (Id. at 6).  As far as the statement attributed to Ms. Whiteside in the TPC that "the White Marsh Mall would assume liability," defendant rejoined that "White Marsh Mall" (as opposed to "White Marsh Mall, LLC") is a trade name, which is not sufficient to identify a principal. (Id. at 5 n.2 (citing Restatement Third, Agency §6.02, Comment d)).

The parties requested an early mediation, which was set for May 7, 2012.  On February 9, 2012, the Court entered a Scheduling Order setting various pretrial deadlines from the May 7, 2012 mediation.  While the Court did not formally stay discovery, the schedule allowed the parties to postpone any discovery to avoid the expense prior to attempts at mediation on May 7.  Thereafter, defendant informed Ms. Whiteside's counsel that it wished to depose the following three witnesses prior to the scheduled May 7, 2012 mediation: Ms. Whiteside, Joe Sumego, and Warren Preibisch.  (ECF No. 38-1).  Mr. Sumego is the BGE inspector who, according to defendant, would not authorize defendant's crew to replace the cable until Ms. Whiteside gave him assurances of indemnification.  (ECF No. 39, 1).  During a hearing held on April 16, 2012, counsel explained that Mr.

Preibisch is the chief engineer and the head maintenance supervisor of the Mall, who was present when Ms. Whiteside allegedly made the statement as to indemnification.

On April 12, 2012, Ms. Whiteside filed an informal motion to stay discovery, specifically these three depositions, until a ruling on the pending motion to dismiss. (ECF No. 38). Riggs Distler argues that it needs discovery on "whether Ms. Whiteside adequately disclosed her principal at the time the alleged indemnification occurred." (ECF No. 39, 2). Defendant goes on to argue that: "[t]his is a factual issue not a purely legal issue. If she did not adequately disclose her principal, then she may be personally liable. Thus, the testimony of the three proposed witnesses is critical as we prepare for the upcoming settlement conference." (Id.). Ms. Whiteside argued that taking those depositions prior to the Court's decision on her Motion to Dismiss would amount to a waste of time and resources. (ECF No. 38, 2).

A motion to dismiss tests the sufficiency of a complaint. In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" James v. Washington Metropolitan Area Transit Authority, 649 F. Supp. 2d 424 (D. Md. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

5

544 (2007).

The Court concludes that the TPC, on its face, fails to state a valid claim for relief against Ms. Whiteside and must be dismissed.

The parties agree that Ms. Whiteside was the manager of the Mall, and that in that capacity she was employed by, and an agent of, GGP, which owns the Mall.  (ECF No. 20, ¶¶ 8-9, 18; ECF No. 28, ¶¶ 8-9, 10).  Ms. Whiteside also claims that she was an agent of the Mall itself. (ECF No. 28, ¶ 10).  The parties also agree that if the identity of Ms. Whiteside's principal was adequately disclosed at the time she allegedly agreed to indemnify defendant for its work, then Ms. Whiteside cannot be held individually liable for any promise made on behalf of her principal.  (ECF No. 32, 4; ECF No. 27-1, 3).

The crucial issue thus is whether the allegations in the TPC are inconsistent with – indeed defeat – a claim for individual liability of Ms. Whiteside as an agent for an undisclosed principal.  If so, the third party complaint must be dismissed.  In opposing the motion to dismiss, Riggs Distler makes two related arguments.  First, Riggs Distler contends that:

> [she] did not disclose the identity of her
> principal prior to agreeing to indemnify Riggs
> Distler.  [T]he Third-Party Complaint does not

>   contain allegations that Ms. Whiteside was an
>   agent for White Marsh Mall, LLC.  See TPC,
>   generally.  Furthermore, the Third Party
>   Complaint does not contain allegations that Ms.
>   Whiteside identified GGP and/or White Marsh Mall,
>   LLC as her principal when she made the agreement
>   with Riggs Distler.  See TPC, generally.

(ECF No. 32, 4-5).  This is a crabbed, unreasonable reading of the TPC, which ignores the import of the entirety of statements in the TPC.  Although Riggs Distler does not explicitly state in its pleadings that Ms. Whiteside was an agent of the Mall, defendant alleges in the TPC that "the White Marsh Mall was owned and managed by General Growth Properties, Inc." (ECF No. 20, ¶ 8) and that in "[her] capacity as General Manager of the White Marsh Mall, she was employed by and an agent of GGP." (ECF No. 20, ¶ 10).  Accord (ECF No. 20, ¶¶ 18 and 24).  Thus, it follows from the statements in the TPC that Ms. Whiteside was an agent of the Mall.  Moreover, the law makes clear that she was indeed an agent of the Mall in her capacity as manager.  See, e.g., Tynes v. Shoney's Inc., 867 F. Supp. 330, 333 (D. Md. 1994); Penowa Coal Sales Co. v, Gibbe & Co., 85 A.2d 464, 467 (Md. 1952).

Second, Riggs Distler asserts that Ms. Whiteside's usage of the term "White Marsh Mall" was akin to using the trade name of "White Marsh Mall, LLC," and thus was insufficient to identify

7

the Mall as her principal, under Comment d of § 6.02 of the Restatement Third, Agency ("an agent's use of a trade name, which may be traced to its registered user through a search of public filings is not sufficient to disclose the principal's identity").

This argument is also unavailing.  In <u>Baltimore Line Handling Co. v. Brophy</u>, the court explained:

> It is of no moment that the Brophys apparently sometimes referred to the LLC as 'Patriot Lines' or as 'Patriot Line and Security Line LLC,' rather than its precise name, 'Patriot Lines and Security, LLC.' *Maryland law is well established that 'a simple misnomer in the corporate name' is insufficient to hold an agent of the corporation individually liable for corporate obligations*.

771 F. Supp. 2d 531, 534 n. 13 (D. Md. 2011) (emphasis added) (citing <u>Curtis G. Testerman Co. v. Buck</u>, 340 Md. 569, 575-76, 667 A.2d 649 (1995)). In <u>Curtis G. Testerman</u>, the Court of Appeals of Maryland similarly rejected the notion that a principal was unidentified merely because the contract was executed in name of "Curtis G. Testerman, *Inc*.," rather than the true legal name of "Curtis G. Testerman *Company*." 667 A.2d at 575-76 (emphasis added). Here, the identification of Ms. Whiteside's principal as "White Marsh Mall," instead of

"White Marsh Mall, LLC" is the same sort of misnomer discussed in Brophy. Omission of "LLC" from any identification of the White Marsh Mall is insufficient to hold Ms. Whiteside individually liable, as acting for an undisclosed principal.

In deciding a motion to dismiss, the Court must consider the facts as alleged within the four corners of the pleadings, and accept them as true. Doing so in this case, the Court accepts the truth of defendant's own allegation in its TPC that Ms. Whiteside told defendant's crew that "White Marsh Mall" would indemnify them. Taken as true, that statement identifies Ms. Whiteside's principal as the Mall, relieving her of any individual liability. Accordingly, the allegations in the TPC fail to state a claim against Ms. Whiteside under the governing law and the TPC must be dismissed.

Given the dismissal of Ms. Whiteside, there appears to be no need for these depositions prior to the mediation. In the April 16, 2012 hearing, defendant's counsel stated that the purpose of the depositions was to clarify the statements Ms. Whiteside made to defendant's crew regarding indemnification—specifically, whether Ms. Whiteside disclosed her principal. Accord (ECF No. 39, 2). This discovery is irrelevant to the claim between Sears, Roebuck and Company and Riggs Distler – the only claim currently before the Court. Accordingly, the Motion

to Dismiss (ECF No. 27) is GRANTED and the Motion to Stay Discovery (ECF No. 38) is GRANTED.

In an April 19, 2012 letter to the Court, defendant requested that the Court either deny the Motion to Dismiss, or, alternatively, "grant [defendant] leave to amend its [TPC]." (ECF No. 43). In this submission, Riggs Distler asserts that Ms. Whiteside acted outside her authority and is liable under the Restatement of Agency, Third, 6.10. However, defendant has not submitted a formal motion for leave to amend with a proposed amended complaint attached. Thus, the Court is unable to completely assess defendant's proposed amendment under a Rule 12(b)(6) standard at this time.

However, there is nothing to suggest in the record thus far that Ms. Whiteside was acting outside of her authority in making her purported statement of indemnification of Riggs Distler. Moreover, Ms. Whiteside conceded that at any deposition she would testify that "if she had made the alleged representation . . ., it would have been done with the consent of her principal, and thus within the scope of her authority . . ." (ECF No. 45, 2).

Finally, it seems unlikely from the recent submissions of Ms. Whiteside on the law and the Court's preliminary analysis of that law that Riggs Distler will be able to amend the complaint

to add a plausible claim for relief under the theory of implied warranty of authority.  However, the Court is not at this time prospectively denying leave to amend.  If Riggs Distler can, consistent with Fed. R. Civ. P. 11, craft a new claim against Ms. Whiteside, it can seek leave to amend, attaching the proposed amended complaint.

Date:  _4/20/12_____                         /s/
                                        Susan K. Gauvey
                                        United States Magistrate Judge