IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**SEARS, ROEBUCK AND CO.,**       *

    v.                                *      CIVIL NO. SKG-11-2203

**RIGGS DISTLER & CO., INC.**     *

\* \* \* \* \* \* \*

**RIGGS DISTLER & CO., INC.**     *

    v.                                *

**VALERIE WHITESIDE**             *

\* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Valerie Whiteside's Motion for Order Finding Defendant/Third-Party Plaintiff Riggs Distler & Co., Inc. ("Riggs") and its Counsel, Eccleston and Wolf ("E&W"), in Violation of Federal Rules of Civil Procedure 11 (ECF No. 34) and her Motion for Sanctions Against Defendant/Third-Party Plaintiff Riggs and Its Counsel, Eccleston and Wolf. (ECF No. 35). For reasons set forth below, the Court GRANTS in part and DENIES in part both the Motion for Order (ECF No. 34-2) and the Motion for Sanctions (ECF No. 35).

### Background

The motions currently before the Court stem from a complaint filed by Sears, Roebuck, and Co. ("Sears") against defendant Riggs Distler & Co., Inc. Defendant Riggs is a

1

Maryland company contracted by Baltimore Gas and Electric to replace an underground electrical cable at the White Marsh Mall. Id. at ¶6. The Complaint alleged that, while replacing the cable, the defendant's employees negligently struck a water main near the Sears store on August 22, 2008, resulting in a gush of water that damaged plaintiff's equipment, created a power outage, and caused the store to close. Id. at ¶¶ 7-8.

On November 17, 2011, defendant filed a Third Party Complaint ("TPC") against Ms. Valerie Whiteside (ECF No. 20). The TPC alleged that Ms. Whiteside, as general manager of the Mall at all relevant times, was employed by and an agent of General Growth Properties, Inc. ("GGP"). (ECF 20, 3). The TPC contained two counts against Ms. Whiteside. Count 1 is for indemnification: from "any and all liability if Riggs [] struck an unmarked, underground water main during the performance of its . . . work on the White Marsh Mall property," and is thus obligated to indemnify Riggs in any judgment entered against it related to the water main. Id. Count 2 is for contribution: that in the event that Ms. Whiteside is not required to indemnify Riggs, she is required to contribute to the satisfaction of any judgment against Riggs because Riggs would not have begun its excavational work but for Ms. Whiteside's agreement to assume liability. Id. at 4.

Ms. Whiteside moved to dismiss the TPC on January 20, 2012,

challenging, as insufficient, defendant's allegations of liability against her. (ECF No. 27). On March 1, 2012 Ms. Whiteside filed her Motion for Order Finding Defendant/Third-Party Plaintiff Riggs Distler and Co., Inc. and its Counsel, Eccleston and Wolf, in Violation of Federal Rule of Civil Procedure 11 (ECF No. 34) and on the same day Ms. Whiteside filed her Motion for Sanctions against Defendant/Third-Party Plaintiff Riggs Distler and Co., Inc. and Its Counsel, Eccleston and Wolfe (ECF No. 35), complaining about the same alleged misconduct as was the subject of her other motion, but asking as relief the dismissal of the TPC with prejudice, an award of Ms. Whiteside's attorney's fees and costs in filing her motion and in defending the suit and other appropriate relief. Ms. Whiteside's motion to dismiss was granted by this Court on April 20, 2012. The Court found that "the TPC, on its face, fails to state a valid claim for relief against Ms. Whiteside and must be dismissed." (ECF No. 46, 6). The Court found that a plain reading of the TPC characterizes Ms. Whiteside as an agent of the mall and that as a purported manager she is an agent of the mall, as a matter of law. (ECF No. 46, 7).

### Standard of Review

Rule 11(b) of the Federal Rules of Civil Procedure stipulates that by signing a pleading, written motion, or other paper, an attorney or unrepresented party certifies to "the best

3

of the person's knowledge, information and belief formed under a reasonable inquiry under the circumstances" that the document is not presented for an improper purpose. FED. R. CIV. P. 11(b). Specifically, such a document must contain legal contentions "warranted by existing law" or contain a non-frivolous argument for establishing new law, as well as present factual contentions that are already or likely will be supported by evidence. Id. Rule 11(c) of the Federal Rules of Civil Procedure grants the Court the ability to impose sanctions on attorneys, law firms, or parties responsible for making representations to the Court that violate Rule 11(b). FED. R. CIV. P. 11(c).

The purpose of Rule 11 is "to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S. Ct. 2447, 2454 (1990)(citing Advisory Committee Note on Rule 11, 28 U.S.C. App., p. 576). However, Rule 11 is not designed "to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991)(quoting FED. R. CIV. P. 11, notes of advisory committee on 1983 amendment).

The Fourth Circuit has held that "[t]he decision to impose sanctions or award attorney's fees under [Rule] 11 lies within the sound discretion of the district court." Western Md.

4

Wireless Connection v. Primo Zini, 601 F. Supp. 2d 634, 639-40 (D. Md. 2009)(citing Deadwyler v. Volkswagen of America, Inc., 884 F.2d 779, 784 (4th Cir. 1989)). Rule 11 inquiries should consider "whether a reasonable attorney in like circumstances would believe his actions to be *factually and legally justified*." Id. (emphasis added)(citing Artco Corp. v. Lynnhaven Dry Storage Marina, Inc., 898 F.2d 953, 956 (4th Cir. 1990)). Sanctions are only warranted if a "reasonable attorney in like circumstances could have not believed his actions to be legally justified." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144 (4th Cir. 2002)(citing In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998)). In other words, a legal claim may be "so inartfully pled that it cannot survive a motion to dismiss" but not rise to the level of sanctions unless it has "absolutely no chance of success under the existing precedent." Id. (citing Simpson v. Welch, 900 F.2d 33, 36 (4th Cir. 1990); In re Sargent, 136 F.3d at 352).

### Arguments

Ms. Whiteside argues that the TPC contains factual contentions unsupported by the evidence, as well as unjustified legal contentions. (ECF No. 34-2, 7-11). First, movant argues the TPC stated as fact, without any evidence and contrary to sworn testimony that Ms. Whiteside agreed to personally indemnify Riggs. (ECF No. 34-2, 7). Second, Ms. Whiteside

5

suggests that even if the TPC should be read to mean that she agreed to indemnification on behalf of her principal, she would still not be personally liable under theories of agency because (a) her principal was fully disclosed and (b) she would have acted within the scope of her authority. Id. at 7-8. Finally, Ms. Whiteside argues that the defendant fails to allege any facts that would support a claim for contribution. Id. at 9.

Riggs responds that a Rule 11 sanction is improper because the TPC was based in fact and law. (ECF No. 47, 2). Specifically, Riggs notes that the TPC was based on facts showing that Ms. Whiteside failed to sufficiently and timely identify her principal (i.e., referring to White Marsh Mall rather than White Marsh Mall, LLC). Id. Therefore, Riggs argues, a claim for personal liability would be proper under agency law. Id. Additionally, Riggs asserts that the claim for contribution is legally supported insofar as Ms. Whiteside was actively negligent. Id. at 10. Riggs also argues that the sanction would be improper because Riggs offered to dismiss the TPC, but Ms. Whiteside rejected the offer and demanded a dismissal with prejudice. Id. at 11. Finally, defendant notes that if any Rule 11 sanction should be imposed, it should upon Eccleston and Wolf and/or Thomas Althauser, who advised the filing of the TPC, not their client. Id. at 12. However, Riggs' position is that no sanction is necessary. Id.

## Discussion

Under the allegations of Third Party Complaint that Riggs filed, there could be no liability against Ms. Whiteside in her personal capacity. The allegations set forth the factual predicate for her agency and the liability of her principal – not any liability for her personally.

> 8. "At all relevant times, the White Marsh Mall was owned and managed by General Growth Properties, Inc., (GGP)."
>
> 9. "At all relevant times, Ms. Whiteside was the General Manager of the White Marsh Mall."
>
> 10. "In Ms. Whiteside's capacity as General Manager of the White Marsh Mall, she was employed by an agent of GGP."
>
> 11. "On or about July 30, 2008, Riggs Distler was present on the White Marsh Mall property preparing to preform directional boring excavation work."
>
> 12. "On or about July 30, 2008, Ms. Whiteside and the head of maintenance at the White Marsh mall approached the Riggs Distler work crew and Ms. Whiteside informed them that the White Marsh Mall would assume liability if the Riggs Distler work crew struck any unmarked, underground water mains during the performance of its work."

(ECF No. 20, ¶¶ 8 – 12).

One can draw no other reasonable inference than that Riggs counsel did not adequately analyze the facts under the settled law in preparing the TPC. The Court does not understand why Riggs did not sue Ms. Whiteside's principals in lieu of her (given the factual allegations of the Third Party Complaint) or in addition to, if Riggs had concerns about agency _and_ a factual basis to do so. The Court is without knowledge as to whether

her principal provided her legal defense.  Even if her principal provided a legal defense, without cost to her, a lawsuit has ramifications, including detrimental effect on a defendant's credit, reputation and employment opportunities.

The history of this dispute demonstrates conclusively Riggs' counsel's position that "The Mall Manager [Valerie Whiteside], agreed to assume responsibility on behalf of the White Marsh Mall in event that the water main was struck by Riggs Distler." (ECF No. 34-5).  Indeed that position apparently was firmly grounded on the deposition testimony of William Strickland, a Riggs employee, who testified under oath that "[s]he [Valerie Whiteside] told me . . . that they were going to assume responsibility if it [the water main] was hit." (ECF No. 34-4, 9).  Indeed, Ms. Strickland testified that another Riggs employee - Joe Sumego - had also been told that the mall would assume any liability. Id. at 8.  There is nothing in the record that GGP or the White Marsh Mall disputed this.  Accordingly, at the time of the filing of the Third Party Complaint the claim was not "warranted by existing law."  Moreover, after the Third Party Complaint was filed, Whiteside's counsel wrote Riggs' counsel a letter carefully setting out the legal deficiencies of the Third Party Complaint.  (ECF No. 34-6).  In its briefing, Riggs did not argue that it was seeking to extend, modify or reverse existing law.  Riggs argued that there were some

circumstances under which Ms. Whiteside could bear personal liability, but those were not pled in the TPC.

In response to the motions, Riggs states that its "contentions that she failed to sufficiently and timely identify her principal(s) and may not have had authority to make the representation provided an objectively reasonable basis for bringing the third party complaint." (ECF No. 47, 2). That response, however, is directly contrary to Riggs' legal position as represented to Sears, the facts of the case as pled in the Third Party Complaint and as known through an earlier Riggs employee deposition.

Riggs further argues that "Ms. Whiteside's failure to timely and sufficiently identify GGP and/or White Marsh Mall, LLC as her principal(s) constitutes information obtained prior to filing of the TPC that supports the allegations in the TPC." (ECF No. 47, 9). But, as Ms. Whiteside points out, "[c]ounsel for Ms. Whiteside is aware of 'no authority . . . which would support the proposition that an agent must recite the entire corporate structure – including parent companies (!!) – of his or her principal to avoid individual liability." (ECF No. 49, 6).

In fact, in its opposition to the motion to dismiss, Riggs characterizes the law only as imposing "personal respons[ibility] under the contract if the identity of the

9

principal is not fully disclosed and is in fact unknown to the third party." (ECF No. 32, 4).

It is objectively unreasonable for a complaint to be filed (and maintained) against a known agent (rather than her principal) on the possibility that that agent might have been acting outside the scope of her authority, might have misrepresented her authority or that the employer might repudiate her authority, making her liable.  Especially, where, as here, the complaint does not set out the factual predicate for such possibilities and thus such personal liability.

The correct approach is not to hold an individual agent "hostage" in a complaint where the allegations (if proven) do not establish individual liability.  Riggs could have pled a claim against Ms. Whiteside as a "rogue" agent, thereby providing the predicate for her (not her principal's) liability. Compare A.S Abell Co. v. Skeen, 26 Md 53 (1972).  Riggs did not do so.  Rather, Riggs filed a legally defective Third Party Complaint against Ms. Whiteside and then demanded as a prerequisite for her dismissal her principals' binding agreement as to her agency.  (ECF No. 47-1, 1).

Accordingly, the Court finds that the law firm of Eccleston and Wolf, P.C. violated Fed. R. Civ. P. 11 under existing precedent.  The Court reluctantly makes this finding because of its generally high opinion of counsel and the firm.  However,

this situation, in my view, demands an acknowledgment.  To avoid additional submissions and delay in this long closed case, I propose an award of expenses against Eccleston and Wolf to Ms. Whiteside in the amount of $5000 payable by October 15, rather than require submission of an affidavit with contemporaneous time records, etc.  If either party objects to this approach, it should notify the Court by September 20, 2013.

    Despite the informal nature of this ruling, it shall constitute an Order of Court, and the Clerk is directed to docket it accordingly.

Date: 9/6/13                                /s/
                                              Susan K. Gauvey
                                              United States Magistrate Judge